UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DEIDRE D. WRIGHT SUMMEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 3:07-0164 |
| | ) Judge Echols |
| **DRAUGHONS JUNIOR COLLEGE, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM

Plaintiff Deidre Summey ("Summey") brings this employment discrimination action against her former employer, Defendant Draughons Junior College, Inc. ("Draughons"), alleging sexual harassment, racial discrimination, and retaliation in violation of Title VII, 2000e *et seq.* and the Tennessee Human Rights Act ("THRA"), T.C.A. 4-21-401 *et seq*. Defendant has filed a Motion for Summary Judgment (Docket Entry No. 20) and a Motion to Strike (Docket Entry No. 32). Both Motions have been fully briefed by the parties.

## I. FACTS

The Court sets forth the facts in Plaintiff's favor based upon the record, Draughons' Statement of Undisputed Facts ("SOF"), and Plaintiff's responses thereto. In doing so, the Court notes that Plaintiff disputes many facts advanced by Draughons, and cites for the dispute paragraphs of her own Affidavit which do not actually dispute the fact at issue.[1]

---

[1] Typical is Plaintiff's response to Defendant's SOF number 28 in which Draughons claims Smith told Plaintiff he would investigate her charges of discrimination and harassment immediately. Plaintiff disputes this fact by citing paragraph 61 of her Affidavit which merely states "I do not know whether Mr. Smith ever investigated any complaints." (Pf. Aff. ¶ 61). This, of course, does not address the statement that Smith told Plaintiff he would conduct an investigation. Another

1

On November 6, 2001, Draughons, a regional career college, hired Plaintiff, an African American female, as a part-time instructor at its Nashville campus. Draughons is an at-will employer and does not enter into employment contracts with any of its full-time instructors.

Plaintiff was promoted to a full-time salaried position as Lead Instructor in January 2002. Her annual salary was $50,000.

On August 2, 2005, Jackie Ward ("Ward") was hired by Draughons as the Director of Education and became Plaintiff's new supervisor. Ward enforced Draughons' rule that all lead instructors work full-time on campus during semester breaks. Plaintiff claims the previous Director of Education, Brenda Sheppard ("Sheppard"), also enforced this rule, but excluded Plaintiff from compliance with the rule after Plaintiff explained that she needed to work from home so that she could study and pass Microsoft tests which would maintain her status as a Microsoft Certified Trainer.

Ward held a meeting on August 23, 2005 with all lead instructors at Draughons' Nashville campus whom she supervised, including Plaintiff. Ward told the assembled instructors she expected them to be on campus during the upcoming semester break to meet with students, participate in planning meetings, help interview and select instructors, and make preparations for the new semester.[2] Ward also told the lead instructors to inform her of their intended office hours.

---

typical example is Plaintiff's dispute of SOF number 44 relating to what was said at a meeting between Plaintiff and two of her superiors. In disputing the statement allegedly made at the meeting by one of her superiors, Plaintiff points to paragraph 83 of her Affidavit which relates to what she remembers being said by the other superior at a different meeting.

[2]Plaintiff does not directly deny that this was the substance of the meeting, but claims that for some period of time prior to Ward becoming the Director of Education, Plaintiff was not allowed any input into the hiring of instructors, whereas before she selected her own instructors.

Beginning August 24, 2005, Plaintiff and Ward exchanged a series of emails. First, Plaintiff emailed Ward: "During the semester break, I will be on campus while preparing my hard drives for next semester's labs, and at home while studying for my next certification test," to which Ward responded: "You must be on campus for 40 hours or take vacation time." Plaintiff responded that she would "be there for meetings and to prepare my hard drives," but went on to claim that she had a contract which was different than the other lead instructors. This different "contract" related to Plaintiff's contention that, unlike other lead instructors, she was not required to sign an agreement when she became a lead instructor, and she previously had been allowed to work from home during semester breaks. Further, when Plaintiff was offered a salaried position, she received an offer letter which said nothing about having to be on campus during semester breaks.

Plaintiff did not comply with the office hour requirement and did not work full time on campus. She did set up hard-drives on campus for multiple Microsoft classes, but spent the majority of time at home studying for Microsoft certification tests, one of which she took and passed during the semester break. Plaintiff claims she emailed Faron Boreham ("Boreham"), the Campus Director, about working from home, but she received no response. She further claims she would have reported to campus had Boreham instructed her to do so.

According to Draughons' records, Plaintiff failed to report to work for eight days during the semester break in late August, early September 2005. On September 9, 2005, Boreham wrote Plaintiff a letter instructing her to report to campus on September 12, 2005, or Draughons would consider her to have willfully resigned her employment. Instead of responding directly to Boreham, Plaintiff, on September 10, 2005, sent an email to the Director of Academics, Rosie Dodson, who works at Draughons' headquarters in Owensboro, Kentucky. In that letter Plaintiff expressed

disappointment with Boreham's letter and stated that she had emailed Boreham about working from home and had received no response. She also stated that working from home limited distractions and allowed her to maintain her Microsoft certification which was beneficial to Draughons.

As directed, Plaintiff reported to campus on September 12, 2005. That day Boreham received a letter from Plaintiff in which she stated it was her intent to remain at Draughons and that she had worked throughout the semester break, primarily in relation to her Microsoft training. Plaintiff further stated that had she wanted to terminate her employment willfully, "it would be because, to date, I have neither seen nor received any documentation that demonstrates any action on your part in response to when I personally complained to you of sexual harassment by Telse Saunders and racial harassment by Terry Focht." (Summey Depo., Ex. 5). This was the first time that Plaintiff had placed any complaints about discrimination or harassment in writing. Early that same evening, Boreham responded by email and informed Plaintiff that, at her request, he had set up a meeting with the Director of Human Resources for 10:30 a.m. on September 14, 2005.[3]

Draughons' Director of Human Resources, Fred Smith "(Smith"), traveled from Draughons' Kentucky headquarters to Nashville, Tennessee for the meeting on September 14, 2005. Smith, Ward and Plaintiff were present at the meeting.

Smith asked Plaintiff what she wanted to discuss, whereupon Plaintiff pulled out a piece of paper from which she read something to the effect, "I have been advised to inform you that I have been racially discriminated against and that I am to say nothing further." Smith told Plaintiff that Draughons has no tolerance for harassment or discrimination of any kind, and said he would investigate the matter immediately.

---

[3]Plaintiff claims she did not request such a meeting.

Smith asked Plaintiff to explain what happened, but she refused to speak and just pointed to her closed mouth. Smith told Plaintiff that he could not investigate if she did not tell him what happened, but she continued to point to her mouth and not speak or participate further in the meeting. In her Affidavit, Plaintiff claims that she refused to speak because she "knew" Smith would not investigate anything, and that "Smith was trying to manufacture evidence against me." (Pf. Aff. ¶¶ 59-60).

From September 14, 2005 until Plaintiff's employment was terminated on October 12, 2005, Plaintiff did not elaborate further about any alleged racial discrimination or sexual harassment. Nevertheless, Smith investigated to the extent he could without Plaintiff's cooperation. Smith determined the only complaints Plaintiff had made to Draughons were a complaint of sexual harassment or touching by Plaintiff's supervisor Telse Saunders ("Saunders"), which Plaintiff said occurred in the fall of 2002, and a complaint of a racially derogatory comment made by Terry Focht ("Focht"), a coworker, in the summer of 2004. Smith determined that both of these incidents had been addressed by management at the time Plaintiff complained. Without any further complaints, Smith determined that he could not carry the investigation any further.

On September 15, 2005, Ward met with Plaintiff to discuss her failure to work office hours during semester break, but again Plaintiff refused to participate. Ward told Plaintiff again that full-time employees were required to work 40 hours per week on campus. Ward explained the importance of having open lines of communication, and that Plaintiff needed to notify Ward of any problems with students, instructors or other things. When Ward asked Plaintiff if she understood, Plaintiff pointed to her ear. When Ward asked Plaintiff if she would be able to talk to Ward about

5

everyday problems, Plaintiff refused to speak.[4] Plaintiff claims in her Affidavit that she was fully cooperative during the meeting, but refused to say anything for "fear" it "would be used against me." (Pf. Aff. ¶¶ 82-85).

Based on Plaintiff's refusal to discuss her actions and participate in meetings with her supervisor and the Director of Human Resources, Draughons decided to give Plaintiff a written warning. Smith drafted a Letter of Warning on September 26, 2005, detailing Plaintiff's performance issues.

In a meeting on September 29, 2005, at which Ward and Plaintiff were present in Ward's office and Smith was present by telephone, Plaintiff was given a copy of the Letter of Warning from Smith. Smith began the meeting by summarizing his meeting with Plaintiff on September 14, 2005. Smith reiterated Draughons' policies against harassment and discrimination, but stated that those types of complaints needed to be handled separately from her performance issues, unless she felt they were related. Smith informed Plaintiff the Letter of Warning listed several performance issues associated with her recent behavior and Draughons expects its employees to discuss performance issues with their supervisors.

When Smith asked Plaintiff if she understood, Plaintiff stated that she had not had time to review the letter and consult her attorney. Smith claims he then told Plaintiff that Draughons does not discuss performance issues with attorneys, but Plaintiff claims she does not remember Smith making such a statement. In any event, Plaintiff did not discuss the warning letter, answer any

---

[4]In its SOF, Draughons states that after Ward posed the question, Plaintiff merely "pointed to her tightly closed mouth[.]" (Draughons' SOF ¶ 39). In response, Plaintiff agrees she remained silent, but disputes that she pointed to her mouth and cites paragraphs 82-86 of her Affidavit. Those paragraphs do not deny that Plaintiff pointed to her mouth, but state only that Plaintiff was respectful.

6

questions or say anything further. Plaintiff claims she did not participate further in the meeting because she had no counsel present, Smith wanted her to admit poor performance and a negative attitude which was untrue, and Smith was trying to "manufacture grounds" to terminate Plaintiff's employment. (Pf. Aff. ¶¶ 97-99).

Since Plaintiff decided not to actively participate in the meeting, Smith suspended Plaintiff without pay until she decided to return and discuss her performance issues. Smith instructed Plaintiff to contact either her supervisor or the Campus Director when she was ready to discuss the issues, and they would schedule a meeting.

Plaintiff did not contact anyone at Draughons to discuss her performance issues, prompting Smith to send Plaintiff a letter dated October 6, 2005. In the letter, Smith gave Plaintiff until noon on October 12, 2005, to contact Ward or Boreham to discuss her performance issues, or her employment would be terminated. Plaintiff did not contact Ward, Boreham or anyone else in authority at Draughons within the time frame set forth in Smith's October 6, 2005 letter and, accordingly, Draughons terminated Plaintiff's employment on October 12, 2005.

Plaintiff claims her termination was in retaliation for having raised the issues of discrimination and harassment. She also claims Draughons retaliated against her by not releasing her Microsoft Certified Trainer Number. Plaintiff admits that she never asked Draughons to release the number, but claims the number should have been released pursuant to the agreement between Draughons and Microsoft which requires that Microsoft be updated on the status of Microsoft instructors.

Plaintiff bases her racial discrimination claim on an allegedly racially discriminatory comment made by Focht, one of her co-workers. During a meeting in the summer of 2004, Focht

7

allegedly said "it must be nice to vote, huh, Deidre?" in response to Plaintiff's suggestion that they take a vote. Plaintiff alleges she complained about the comment to her supervisor on or near the day she heard it. Plaintiff did not file a charge of discrimination regarding the alleged racial discrimination until November 15, 2005, when she filed a Charge with the Tennessee Human Rights Commission.

Plaintiff also alleges that her supervisor, Saunders, sexually harassed her by touching her buttocks on three separate occasions. All of the touching incidents occurred during the fall of 2002. Plaintiff did not tell anyone in authority about the incidents until after Sheppard became Plaintiff's new supervisor on August 22, 2003. Plaintiff did not file a Charge of Discrimination regarding the alleged harassment until November 15, 2005, when she filed a Charge with the Tennessee Human Rights Commission.

Plaintiff commenced this lawsuit on February 6, 2007.

## II. LEGAL ANALYSIS

Draughons has moved for summary judgment on the entirety of Plaintiff's claims. Prior to reaching the Motion for Summary Judgment, the Court considers Draughons' Motion to Strike.

### A. Motion to Strike

Draughons asks the Court to strike Plaintiff's memorandum response to Draughons' Motion for Summary Judgment, Plaintiff's Response to Draughons' SOF, and Plaintiff's Affidavit because they were not timely filed. Plaintiff was given an extension of time to file her response until the close of business on November 19, 2007, but did not actually file her response until November 20, 2007. Plaintiff argues her filing should not be considered untimely because the Order granting her an extension of time until November 19, 2007 was not entered until November 21, 2007, after she

8

filed her response. This argument is disingenuous because, no matter how one looks at it, Plaintiff's filings in response to Draughons' Motion for Summary Judgment were not timely filed. Nevertheless, the Court will not strike the filings because Draughons has alleged no harm and because lawsuits should be determined on the merits to the extent possible.

In the alternative, Draughons asks the Court to strike numerous paragraphs from Plaintiff's 115-paragraph Affidavit on the grounds that they are conclusory, lack foundation, lack personal knowledge, or contain hearsay. As a general proposition, motions to strike are disfavored. See, Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Such motions should be granted only "in extraordinary circumstances," such as where "the document is redundant, immaterial, impertinent, or scandalous and this document has caused some prejudice to the opposing party." Reyes v. Seaton Ent., LLC, 2008 WL 400452 at *6 (E.D. Tenn. 2008).

In setting forth the facts in this Memorandum, the Court has considered Plaintiff's Affidavit only to the extent that it is based on personal knowledge and sets forth facts as would otherwise be admissible in accordance with Rule 56(e) of the Federal Rules of Civil Procedure. Accordingly, the Motion to Strike certain paragraphs of Plaintiff's Affidavit will be denied.

### B. Motion for Summary Judgment

#### 1. Standard of Review

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be

9

addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### 2. Sexual Harassment and Racial Discrimination Claims

Draughons seeks dismissal of Plaintiff's sexual harassment and racial discrimination claims on the grounds that they are untimely. Both are brought under Title VII and the THRA.

"It is well-established that a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to suit in the district court," Mitchell v. Chapman, 343 F.3d 811, 819-20 (6th Cir. 2006), and "the first requirement is that a plaintiff must file a discrimination charge with a state or local agency within 300 days after the occurrence of the 'allegedly unlawful employment action.'" Austion v. City of Clarksville, 244 Fed. Appx. 639, 647 (6th Cir. 2007)( quoting 42 U.S.C. § 2000e-5). "The THRA provides that a suit must be filed 'within

10

one (1) year after the alleged discriminatory practice ceases.'" Booker v. The Boeing Co., 188 S.W.2d 639, 648 (Tenn. 2006), quoting, T.C.A. 4-21-311(d).

Plaintiff's claim of racial discrimination relates to a statement allegedly made by Focht during a meeting in the summer of 2004. Her claim of sexual harassment relates to alleged touching by Saunders, all of which occurred during the fall of 2002. However, she did not file a charge of discrimination with respect to either of those events until November 15, 2005, and she did not file suit until February 6, 2007. Plaintiff's claims are clearly time-barred under both Title VII and the THRA because more than 300 days passed between the time of the allegedly discriminatory events and Plaintiff's filing a charge, and more than one year passed between the allegedly discriminatory conduct and the date Plaintiff filed suit.

Plaintiff appears to concede that her racial discrimination and sexual harassment claims are untimely. In her response she states: "The Defendant correctly states that Plaintiff's Tennessee Human Rights Act claims of sexual harassment and racial discrimination are time barred, as Plaintiff did not meet the one-year statute of limitations." (Docket Entry No. 28 at 5). She then writes: "The Defendant correctly argues in the Memorandum that Plaintiff's Title VII claims of sexual harassment and racial discrimination are time-barred, as Plaintiff did not meet the 300 day statute of limitations." (Id). However, those apparent concessions are followed by Plaintiff's conclusory assertion that she was "subjected to a pattern of harassment and racial discrimination conduct [sic]," and that the Court has "subject matter jurisdiction over Plaintiff's Title VII claims" because the "claims of sexual harassment and racial discrimination grew from the EEOC complaint." (Id).

Turning to the latter statement first, the Court does not understand how any claims of sexual harassment and racial discrimination which grew from the EEOC complaint could even exist, let

11

alone be properly before the Court. Plaintiff filed her charge with the EEOC on November 15, 2005, after her employment with Draughons was terminated on October 12, 2005.

As for the first assertion that Plaintiff was subjected to ongoing sexual harassment and racial discrimination, Plaintiff offers only a conclusion, and no evidence. Plaintiff has offered the Court nothing from which it could conclude that apart from the incident involving Focht, she was treated differently because of her race than other similarly-situated employees as would be required to support a racial discrimination claim. See, Dews v. A.B. Dick Co., 231 F.3d 1016, 1020-1021 (6th Cir. 2000)(setting forth elements for *prima facie* case of racial discrimination). She has also failed to present any evidence from which it could be concluded that Plaintiff was subjected to unwelcome harassment which was severe or pervasive enough to alter the conditions of her employment and create an abusive working environment, see, Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993), so as to support a sexual harassment case. Accordingly, Draughons is entitled to judgment on Plaintiff's claims of racial discrimination and sexual harassment.

3. **Retaliation Claim**[5]

In order to establish a *prima facie* case of retaliation, Plaintiff must show: (1) she engaged in protected activity; (2) this exercise of protected rights was known to defendant; (3) defendant

---

[5]The parties analyze Plaintiff's retaliation claim within the framework of Title VII and the THRA, both of which use similar standards. See, Gee-Thomas v. Cingular Wireless, 324 F.Supp.2d 875, 881 (M.D. Tenn. 2004)("analysis of claims under the THRA is the same as under Title VII"). The Court notes, however, that in her Amended Complaint, Plaintiff alleges "common law retaliation." This difference is immaterial to the analysis since, even under Tennessee's common law, "[p]roof of discharge without evidence of a causal relationship between the exercise of a protected right and the discharge does not present an issue for the jury." Gooch v. City of Pulaski, 2007 WL 969398 at * 7 (Tenn. Ct. App. 2007); see also, Mills v. Earthgrains Baking Co., 2004 WL 1749500 at *6 (E.D. Tenn. 2004)(to establish common law retaliation, Plaintiff must show that a substantial motivating factor in his discharge was the exercise of a protected right). Plaintiff presents insufficient evidence of a causal connection in this case.

12

thereafter took adverse employment action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000)(emphasis omitted). "If and when a plaintiff has established a *prima facie* case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." Id. at 792-93 (citation omitted). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" Id. at 793 (citation omitted).

Turning to those elements in this case, the parties agree Plaintiff's termination constituted an adverse employment action, and that Draughons was aware when it terminated Plaintiff that she had complained about racial discrimination and sexual harassment. In her brief, Plaintiff lists, without any analysis, her having to justify grades, the Registrar's Office changing grades she gave students, her not being allowed to make decisions and Draughons' refusal to release her Microsoft Certified Trainer number as adverse actions. However, Plaintiff has not shown that these actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2416 (2006). Moreover, with the exception of Draughons' alleged refusal to release her Microsoft number, Plaintiff has not shown that the parties committing the allegedly retaliatory acts were even aware of Plaintiff's protected activity. As for the issue of releasing the Microsoft number, Plaintiff has not shown that it was in fact Draughons' responsibility to issue the number even absent a request, nor has she shown what impact Draughons' alleged refusal to release the number had on her. Thus, the Court focuses on Plaintiff's termination which, unquestionably, is an adverse

13

employment action. That leaves for consideration whether Plaintiff engaged in a protected activity and whether there was a causal connection between that activity and Plaintiff's termination.

Draughons claims that Plaintiff's complaints about race discrimination and sexual harassment did not amount to protected activity because the claims were stale and would not support a charge of discrimination. Plaintiff argues that not allowing her "to complain about the discriminatory actions and harassment that she suffered would be bad public policy." (Docket Entry No. 28 at 6). This Court need not resolve the question because Plaintiff has failed to establish a causal link between her termination and her engagment in protected activity.

A plaintiff may seek to show causation through either direct or circumstantial evidence. Shramm v. Slater, 105 Fed.Appx. 34, 41 (6th Cir. 2004). In this case, Plaintiff claims a causal link is established because less than a month after telling Smith during the September 14, 2005 meeting about Focht's alleged racial discrimination and Saunders alleged sexual harassment, she was terminated. "However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000).

Moreover, Plaintiff's suggestion that her raising the complaints of sexual harassment and racial discrimination was the cause of her termination ignores what preceded the meeting with Smith on September 14, 2005. On August 23, 2005, Plaintiff, like every other lead instructor, was told that she needed to work full time on campus during the semester break. Plaintiff refused and was absent without authorization for eight days between August 26, 2005, and September 9, 2005. On September 10, 2005, Plaintiff received a letter from Boreham, in which he told Plaintiff that she would be considered to have resigned her employment if she did not report to campus on September

14

12, 2005. It was only after this, in what Defendant aptly characterizes as an attempted pre-emptive strike, that Plaintiff raised issues of racial discrimination and sexual harassment. Even after raising those complaints, she refused to discuss them further or cooperate in any investigation of the allegations, and she refused to discuss her performance issues as requested by Ward and Smith. Employers "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Clark County School Dist. v. Breeden, 532 U.S. 268, 272 (2001).

Even if Plaintiff could establish a *prima facie* case of retaliation, Draughons has offered legitimate non-discriminatory reasons for its actions, including Plaintiff's refusal to comply with its instructions to work on campus during semester breaks, Plaintiff's unauthorized absences from work, and Plaintiff's continued refusal to discuss performance issues, even after being warned of the consequences. It is therefore incumbent on Plaintiff to show these proffered reasons are pretextual. She may do so by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Dew, 231 F.3d at 1021.

In her response brief, Plaintiff does not even address the issue of pretext. The simple undisputed facts in the record show the following:

- On August 23, 2005 Plaintiff's supervisor instructed Plaintiff and all other lead instructors to work regular office hours on campus during the upcoming semester break and notify the supervisor of the expected office hours;

- Plaintiff did not follow her supervisor's instruction, did not work full-time on campus during the semester break, and missed eight days during the break;

- On September 10, 2005, the Campus Director instructed Plaintiff to show up at work on September 12, 2005, or Plaintiff would be considered to have resigned her employment;

15

- On two different dates, September 15, 2005 and September 29, 2005, Draughons attempted to discuss Plaintiff's unauthorized absence over the semester break with Plaintiff, but she refused to participate;

- Plaintiff was suspended without pay on September 29, 2005 until such time as she chose to discuss her performance issues with her supervisors, but Plaintiff never chose to do so;

- On October 6, 2005, Plaintiff was notified in writing that she had one more week to return to Draughons and discuss her performance issues, or her employment would be terminated effective October 12, 2005; and

- Plaintiff did not return to Draughons or contact anyone to discuss her performance issues and her employment was terminated.

These undisputed facts show more than ample reason for Plaintiff's termination and she offers absolutely no evidence that Draughons' reasons for her termination had no basis in fact, did not motivate Draughons' actions, or were insufficient to result in termination. Accordingly, Draughons is entitled to summary judgment on Plaintiff's retaliation claim.

### III. CONCLUSION

On the basis of the foregoing, Defendant's Motion to Strike (Docket Entry No. 32) will be denied. Defendant's Motion for Summary Judgment (Docket Entry No. 20) will be granted.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE